The first case this morning is No. 22-1769, Lone Star Technology Innovations v. ASUS Computer International. Mr. Joshi. Good morning, Your Honors. Vinay Joshi for the appellant ASUS Tech. I have reserved five minutes for rebuttal. May it please the Court. Your Honors, Lone Star does not own the patent. By that, I don't mean to say that they did not prove ownership. That is true also, but I mean to go a step further and say they do not own the patent. What type of standing argument are you raising? Are you raising an Article 3 standing argument? Are you raising a statutory standing argument? Can you kind of categorize the type of argument you're raising? Yes. We're not raising what they call the provincial. We're not saying somebody else is the owner and they need their permission together. We're saying that 35 U.S.C. 261 requires written evidence of ownership. We don't believe the patent ever was assigned or owned by them or they have any license to sue other people with it. Okay, but that doesn't really answer the question. Are you relying on Article 3 standing? Yes. But not statutory standing? Yes, we're relying on Article 3 standing.  Yes. Okay. Yes. And so there was testimony at the trial as to patent ownership. So why isn't that sufficient to establish patent ownership? Because the case law is clear and we've cited cases that say that the ownership must be proven through written instruments. According to trial testimony… That's a statutory standing argument. I apologize, Your Honor. I'm confused and I am claiming statutory. Yes. Okay, but the problem is you waived statutory standing by not raising it until after the trial was over with. Respectfully, that is incorrect. Where did you raise it? We raised it when I cross-examined Mr. Jesse Rice and I asked him… But what did you preserve in the pretrial order that you were making this argument? We did. We did. We said three things in our pretrial order. We said that we don't infringe, that the patent is invalid, and even if we do infringe, we don't owe any damages. How does that preserve the standing argument? Because if you infringe, you must pay some reasonable royalty damages. And because we said that even if we infringe, we don't owe any damages, that necessarily… Did you ever in your pretrial order say that you disputed standing? We, in our pretrial argument, said that even if we infringe, we don't owe damages. That necessarily means they don't own the patent. Let's assume we reject that and that we find that you waived the statutory standing argument by failing to raise it in the pretrial order. What is the problem, if any, as to constitutional standing? The problem with constitutional standing is that the chain of title, according to trial testimony of Mr. Rice, goes something like this. The inventors assigned the patent to their employer, an Israeli company named Oplus Technologies Limited. After that, Intel took ownership of the patent, but there is no evidence of that. Do you mean that they didn't show ownership because they misdescribed the chain of title? Is that the argument? At the oral hearing, and I'm sorry, at the trial… Answer my question. Yes. Is that the argument? They didn't establish patent ownership because they misdescribed the chain of title? They described the chain of title correctly at the trial. It doesn't match up with the recordation at the patent office. So what? That has nothing to do with constitutional standing. Your Honor, the case law is very clear that ownership must be proven with written documents. That's 35 U.S.C. 261. That's not an Article III requirement. Maybe we should go on to the next issue. Okay. So the next issue has to do with inducement. And there were two trials in this case, and the method claims are at issue in this case. And there's no allegation of direct infringement by ASUSTEC. There's also no allegation of contributory infringement by ASUSTEC. So the only allegation is that of inducement. And after the first trial, the judge in the district court correctly ordered a second trial. Because the judge said that you did not show evidence of correlation between the damages and direct infringement. And so we had a second trial. So at the second trial, they didn't bring any evidence again of direct infringement. They said that the evidence that they have is the survey that we brought. We had a survey done to show that this optional feature, this is a menu you have to go into, then you go into a submenu, then you go into another submenu. It's not necessary that this method is executed every time a monitor is used or a projector is used. So then we go into this is an optional method, just like in Lucent Gateway. So we had this retrial. They said, well, your own evidence shows that about 16.2% of the users actually use this method. First of all, that wasn't submitted in their case. So when we made our 50-day motion, it wasn't submitted. But if you take the 16% figure and you multiply that by $6.4 million units and the highest royalty rate that they're claiming, which is $0.70 a unit, then you get something actually which is in excess of a jury verdict. So why isn't the jury verdict supported by substantial evidence? Because even if all of that is true and there is evidence of direct infringement and the jury has that leeway, where is the evidence that we induced that direct infringement? That's only circumstantial. The only evidence that there is is that we have these manuals that you can download online. They don't come with the box in which the monitor comes. So there needs to be shown some evidence. And this is just Microsoft, the same situation that Microsoft was. So they need to show the correlation that the direct infringement was caused by inducement. And if they can't show that, then they only get damages based on circumstantial evidence of inducement, which is one unit of royalty per type of product. Haven't we said product manuals can be enough to substantiate inducement of infringement? They can be as circumstantial evidence, but then the damages that you get is just... So here we have many, many product manuals, right? And then we also have your company's website, the Q&A page, and then a few other things in the record...  ...that make it clearly available on how owners of this product can perform this decided method. That's true, Your Honor, and all of that is correct factually. You can get those manuals online either through our website, you can go on Amazon, you can go somewhere else, and you can get them. But the question is, did any of these 16.2% of the people that supposedly did the direct infringement do it based on those manuals, or they just played around and they did it? If they did it, we didn't induce. So there are these manuals, but the question is, what kind of damages do you get? And Lucent Gateway is quite clear that you would get circumstantial evidence damages, which is for one unit per type of product. You wouldn't get it for all 16.2%, because there was no showing of inducement to do that direct infringement. Okay, could we move on unless my colleagues have further questions about damages? Move on to the question of infringement and the issue of what you characterize as a secret claim construction. Yes. I confess that I found this all very confusing. Yes. And why isn't the approach that the plaintiff's expert took the correct approach? It talks about not affecting other pixels or whatever, or that they're talking about not changing it beyond the change to the one component, let's say red 233 or something like that. It doesn't require that you only change pixels with an identical linear composition.  Are you finished, sir? Yes, okay. So the definition is of a term called individual color. The definition of the individual color, the court got it exactly right. It says it's a linear combination of color components or colors. So, for example, before me are red, blue, yellow. In computers, they're red, blue, and green, and all the other colors are a combination of them. So now you identify an individual color. Let's say it's 30% red, 30% blue, and 40% green, okay? So now what happens is you go to the next step, which is identification, and there it says said selected. So you selected an individual color. You selected a color. Let's say it's all red or, you know, let's, for example, let's say it's all red, 100% red, and then the G and the B are zero. Now you go to the next step, and you say you identify within those pixels where that color is, okay? So at that point, it should be that color. But there's a second definition. The second definition says, no, no, no, what red is is based on logical conditions. So, for example, somebody could, and this is what even their expert says, I don't understand this. I'm using it. But I could define any logical condition any way I want. He used the logical condition, anything that has even a little bit of red. So 1% red and 99% blue he says is red. Is your argument that you believe the claim construction is inconsistent for the same term between steps B and C? Yes. Why did you suggest the claim construction, which gave the same construction for individual color throughout the patent claim? Could you please say that again? I did not hear. Why then, if it was supposed to be different between B and C, why did you, in your proposed claim construction, offer a construction which was adopted by the district court, which is the same for B and C?  Well, that's not true because we were not allowed to show the jury the entire claim construction order, just the definition. So that's the definition, but then their expert got on the stand and applied it in a way that was different from the first one. But your definition for individual color was the same for B and C, and now you're saying it shouldn't be the same, right? No, I'm saying it should be the same, and the court's order makes it different. The court's order says for the first time it's one color, like red, and the second time you get the person, the expert, whoever is looking at it, gets to logically define whatever they want it to be. Can you show us where the court's order makes it different? Yes, so there is a section in the proclaimed construction order that begins with differences. Let me find that, Your Honor. One second, I have it. I believe it's Appendix 1059. Appendix 1059. Okay, so now there's a section, so the claim construction order begins before, but then at 1059 at the bottom, defendants suggest that claim one selecting step is limited to selecting an exact individual color, and they are correct, so it needs to be red, or 30% red, 30% green, 30% blue. Well, that's the rub of things. Your argument is premised on the idea that individual color has to be a particular color point notation. Yes. You know, certain R value, certain G value, and a certain B value. Yes. And the district court at 1060 clearly rejected that idea, that individual color doesn't have to be a particular color point notation for a particular pixel. It's not a pixel-based kind of conception of individual color. Individual color could just even be red alone. Yes. And that's borne out by all the different embodiments that are described later in the patent specification. Yes. Where they say, in all those examples, hey, you can just have red as the individual color. And so if just red can be the individual color, then there isn't a variance in understanding of how individual color, the term, is being used in the selecting step and the identifying step. Because you select red as your individual color, and you're going to change the hue or saturation of red. And then you're going to identify all those pixels that have red, right? Yes. Maybe among other things, too, of course, but that have red. Yes. And then use some sort of formula to decide which of those pixels that have red that are going to be identified, quote, unquote, to have their hue actually change. So in that way, individual color, with that understanding, it doesn't have some kind of migrating, differing understanding between the two steps. Well, it does, Your Honor, because the way this order is, and then they go on to say that to the extent the defendants argue that identifying step is limited to identifying that have the exact individual color, they are incorrect. So let's say you pick red, okay? Let's say you pick red. The judge there is talking about to the extent you believe the pixels have to have the exact individual color. That means pixels that have the exact color point notation. Right. Pixels that are particularly coded with an overall color scheme. And there the district court is saying, no, that's not correct, because as all those embodiments show, you could just select a color like red or like green that you want to turn up or turn down the hue on. Right. But, Your Honor, the purpose of coding construction is to make things more definite so we can talk about infringement and invalidity. This makes everything amorphous. It just leaves it to the expert on both sides to apply whatever logical conditions. They don't even limit it to preferred embodiments. The problem that I see is that this qualification to the claim construction, which appears at 1059 and 1060, was not something that the jury was informed about. In fact, the judge refused to allow the jury to be informed about it.  So what the jury was told was confusing. Now, what we do about that is another question, but that's the heart of the problem, isn't it? That's exactly right, Your Honor. And if I may add to that, it also harmed us in our cross-examination of the expert, their expert, because the jury didn't know about this further clarification, so to speak. And we're trying to explain to the jury that the expert is using two different definitions, but we weren't able to do that at trial. Did you make an objection to that, to preserve it for appeal? Yes. Well, it's not clear to me that you did. I mean, right now, what we have is what you refer to as a secret claim construction that never got in front of the jury. Yes. So you can't appeal it in that way. But yet, at the same time, I didn't really see throughout the trial where you said, you know, we are unable to present our case because, Judge, you're not allowing us to because it doesn't conform with your secret construction. And so, you know, we object to that. No, no, we did, Your Honor. There's actually a footnote in my brief. We did it twice. Once we actually, after the order, we appealed with a motion. That's in the record. And then there was a sidebar. What's the footnote you're talking about? Where the judge said, you are flirting with something I told you not to do. One second. It might be in my reply. I recall a sidebar where the judge stopped me. I even asked their expert to read something, and I was told not to do that. I can find it, Your Honor. I know. Is this in your opening brief? It's in the opening or in the reply brief. But I remember vividly I was shut down from doing that. Well, there's no question that you were shut down. The question is whether you raised that. Oh, yes, yes, yes, yes. I did. You have to raise it in the blue brief. I did. I did. Let me see the infringement.  We move for reconsideration, too. Okay. Here is it. In the blue brief, 64, page 64, footnote 7, the district court stated, I assure you, Mr. Joshi, that the claim construction order did not limit the claim to the preferred embodiment. And it sounds like to me that's precisely what you're trying to do here, and I'm going to caution you against that. That's part of the larger conversation I had with the judge at the sidebar. Well, what is it in the blue brief that you're complaining about? So what I'm complaining about is that you didn't offer a different claim construction. You just offered the one claim construction, which he adopted and qualified in the text that we were referring to earlier. What's the point you're making in the blue brief? The point I'm making is that he improperly shut you down from exploring the significance of this, quote, secret claim construction. Yes. He did not allow me to explore on claim construction. And also, the definition, the first definition, the one that was given to the jury, a linear combination of individual colors, is not what their expert used at trial. He used a different definition to show that what he was trying to show is that no other color changes. That's the big deal about this claim. You change one color, everything else remains the same. Now he's saying everything else changes, but they're also red. There's red in every pixel because there is no logic as to what red is. If it's all blue, it's red. If it's all green, it's red. And so this limitation that no other pixel is changing, he says, by logic, nothing changes, even if they all change. Can I get a little bit more clarity regarding kind of when you raised issues with this, quote, unquote, secret claim construction? First at the trial level, and then I assume you're pointing us to page 64, note 7, for where you think you raised in the blue brief, and then I did see some more statements about it in the reply. Can you tell me how the claim construction was presented on this particular limitation in dispute to the jury? And how, if at all, the secret claim constructions would have been presented to them? So the jury was just given the definition. So all the jury knew was individual color is a linear combination of colors or color components. That's all they got, nothing more. The secret is we were told by the judge that only those one-line definitions of various terms will be given to the jury. But the claim construction order has this section, which I showed before, where it says further clarification, or it says there are further disputes. That portion was never allowed to be shown to the jury. So then it didn't affect the jury verdict. It didn't affect the jury verdict. Well, it affected the jury verdict because we wanted to have a discussion with their expert about the logical conditions, which this footnote says is not limited to the defaulting body mass. So there is no definition here. Like, every color is red. I guess I'm lost because I don't see you raising an objection at trial saying, Your Honor, we want to preserve for appeal the fact that we are unable to present a certain kind of non-infringement theory because there is some kind of additional construction that we are obligated to follow at this trial that blocks us from making our non-infringement case. No, Your Honor. Respectfully, that is not correct. We filed an entire brief to protest the claim construction. And then at trial, too, there is a sidebar that's in the record on that claim. I'm just having trouble identifying that in your blue brief so that you can actually have a vehicle to appeal what you're calling a secret claim construction because it didn't get to the jury. So in that sense, it couldn't have harmed you through the jury verdict with some kind of flawed jury instruction. Then the next question is, all right, well, how else? If the jury never saw it, how did it actually hurt you? Well, maybe it hurt you because you weren't able to present a non-infringement theory. But I don't see you explaining to us in the brief that you made that kind of objection at trial that could preserve it for appeal. Well, no, we do discuss in our brief. So if we go to, for example, page 75 of the blue brief, so that's where we explain how this hurt us on non-infringement because even their expert admitted on those pages right there, I would say 74 on to 79, what we explain is that if we go by the definition of individual color, red, we have a very, very strong non-infringement argument that there are many pixels other than that red that change. And therefore, we don't infringe. In other words, there are other pixels other than the linear combination that are changed as a result in your product. Yes, and their expert admits that, and that's why he goes to this definition where he makes it amorphous, and he says under logic, I can define it to be anything I want it to be, but that's not the purpose of claim construction. Can I ask you this? So I've been poring over this record some, and at least on appendix page 2333, there seems to be some discussion back and forth between your team and the judge regarding what's going on in terms of claim construction and what is going on with the witnesses. Am I understanding that correctly that this is where you're saying down below you may have raised an issue in terms of what we're calling the secret claim constructions? I'm in the appendix 2333. The misimpression has endorsed a theory without full benefit, and then, yes, it might be. This is actually the other side arguing for a mistrial, right? Yes. Yeah, oh, yeah. Well, they argue for a mistrial because I raised objections about these two different definitions, and they said jury had heard some of that, and they moved for a mistrial based on that. So I'm still struggling a little bit, and I apologize for struggling on this. Where, if at all, did you contend that there was a problem in terms of something going to the jury, whether it was in the form of testimony that some of the witnesses felt bound by the secret constructions and they were testifying accordingly, and where was that preserved below, and then where would that be preserved in the blue brief? So that came out below in two places, one at trial and before we filed a brief protesting or re-urging. The motion for reconsideration. Reconsideration. At the trial, I had myself, their expert's name is Dr. Dusharmay, and he and I had an extensive discussion about these two different definitions that he's using, and even he said, that doesn't make sense to me, and I quoted that, and I believe it's in the reply brief. I said, well, you didn't, he says, it doesn't make sense to me, but that's the logic I'm using. And I said, what logic are you using? He said, logic is if you even have slight red, if it's 99% blue and 1% red, I can call it red under the definition. Do you have a page as to what you're describing? Is there something I can look at in the record? Yes, I can. So that would be. I will offer that if my colleagues are okay with it, you can give me the page on rebuttal. No, I'll give it to you right now. I have one. It'll just take me just a second. Why don't you give it to us on rebuttal? Okay. We'll give you three minutes. Thank you, Your Honor. Ms. Ishimoto. May it please the Court, my name is Jennifer Ishimoto for Lone Star Technological Innovations, LLC. So there seems to be a real problem here with infringement. Let's address that first. The jury was given a single instruction about the meaning of individual color. It was denied access to the claim construction order. And if I had been on the jury, I would have been very confused as a result of this. Now what the consequence of that is, I don't know. I mean, why is it that you were fighting against disclosing to the jury this other aspect of the claim construction order, which would have made sense out of the arguments that you were making? Well, Your Honor, first of all, I disagree with their assertion that there was this secret claim construction or even a second definition of it. They're referring to the fact that the claim construction order had a gloss on individual color, which was not brought before the jury. That's true, isn't it? No, it was defined. It was given the definition that was given to them. They were instructed only with the definition, and they weren't told about the gloss that the district court put on it. But I guess what I would argue, Your Honor, is that the court found that way because when you look at the actual claims themselves, the use of individual color is referring to the choices that you have to select from. So in a three-axis monitor, it's red, blue, green, for example. Individual color is defined in terms of a particular combination. So you could choose all three of these. Weight in linear terms, right? Yes, but when you then talk about the selecting or the identifying, when you use those with the said individual color, then it goes into talking about the selecting of the pixels and so forth. For example, in the 1C, the identifying portion, it says identifying a plurality of said input image pixels having said individual color. And then the 1C then goes on and on. Is it not the case that in C, the reference to individual color is not referring to a linear combination? It's referring to the individual color of red, blue, or green. Is your answer that it is not referring to a linear combination? In other words, the claim construction that the jury was given cannot be applied to the use of the word individual color in C. Well, you certainly could choose an individual color of more than that. No, but you're not answering my question. You cannot use the simple claim construction that the judge charged the jury with in interpreting the words individual color in C. It makes no sense, right? I think it makes sense, Your Honor, in that the court said that it could not be the pixels, or it doesn't have to be the pinpoint pixel, is not what the individual color is. That's when you get down to the selecting or identifying stage. Where did the court say that? That's not the claim construction that the court gave the jury. But it is in the actual claim itself when you read the claim. Well, the judge said this under the heading of the additional construction disagreements where it said individual color doesn't have to be the particular color point for a given pixel. Correct. But that still brings me back to Judge Dyke's original question, which is why did the district court restrict the jury from seeing this portion of the markment order discussing this additional construction disagreement? I don't have an answer for why the court took that position. But certainly I think that when you look at the claims, that it's clear when you talk about the selecting or the identifying. Let me get to Judge Dyke's question a different way. Sure. The district court seemed to think just the color red can be an individual color. Sure. Why is the color red alone a linear combination of colors or color components? It is how it's defined by the inventor in the patent itself. Can you just in plain language answer my question, which is also I think Judge Dyke's question. Why is the color red a linear combination of colors or color components? I've been wondering that for the past several days. And maybe you can provide me an answer to that. I would say that red is a linear combination in that it could be that you choose to choose red and blue, green, I guess. But red in and of itself is. Okay. It sounds like there's not a great answer maybe. Nobody in this world can provide a great answer. You would be the best candidate on the planet, and I'm not hearing something very good. So maybe the best answer is what we have is a bit of a wonky patent specification where we have one place saying individual color means a linear combination of color or color components. And then we have a series of embodiments, cases one through six, which identify just a color in each example as being the individual color. Will the inventor… Please do not interrupt. I'm sorry. I might be trying to help you at this moment. My apologies, sir. So we have another portion of the specification, cases one through six, where in each case they just identify as the individual color something like a red or a green or a blue, et cetera. And so that seemed to be what the district court was trying to do in reconciling all of this in the patent by saying, you know, the patent also tells me that red alone can be an individual color. It may not cleanly fit with translating into a linear combination of color or color components, but at least these embodiments drive this certain kind of understanding. Could that be the best way to understand what's going on here? It could be, Your Honor, and I would also point that the inventor… Well, there's probably no other better way for you than that. But the problem that I see with that is what Judge Chan is suggesting, and it may be correct, is that the district court's interpretation of the patent and the order was correct. The problem is the jury wasn't told that. The jury was given an instruction as to the meaning of individual color, which rendered the whole claim incoherent. That's the problem. Understood, Your Honor. I don't have a great answer for why that is. Is the issue preserved? Well, I don't believe that the issue is preserved. It doesn't seem as though they objected to that, but they've made different arguments at different times. That makes it a little muddling. But did you say you agree that they did object to that at trial? No, I said that I don't think they objected to that at trial. Let me ask you a housekeeping question, which might be a welcome reprieve. The housekeeping question is, with respect to this definition proposed by the District Court of Individual Color, it says linear combination of colors or color components. Do you view linear combination as also modifying color components? Do you understand my question? No, can you say that again? I'm sorry. Sure. So if you have appendix page 1058, it might be easier if you look at it. Sure. And tell me when you're there. I'm sorry, what are we looking at? I thought it would be easier to answer my question if you turn to appendix page 1058, and then once you're there, I can reiterate the question. Okay, go ahead. So as you can see, it says the court construes the term individual color to mean linear combination of colors or color components. My question to you is, does linear combination also modify color components, or do you just see it as modifying colors? How do I understand the term construction is what I'm trying to ask. I would say that it modifies both. But I would also point out that within the specification, it does give the inventor gave a definition of individual color and gave that linear combination, but also then put such as red, blue, green. At the end of it. And the court took that out, which was our construction, our proposed construction. That would clarify the issue. If we view there being a problem with claim construction that was appropriately preserved, and let's assume for the moment appropriately presented to us here, what do you believe would be the right form of relief or next step? I guess the right step would be that you would remand and we'd have a third trial in this case. Is there any other litigation going on in this case? No. So if we did a hard or firm or a hard reverse, that would be the end of everything? Correct. I wanted to talk briefly about the standing issue that he brought up. And I want to be clear that ASUS never did bring this up in the pre-trial order. And their claim that because they say, well, we said that the issue of damages was an issue, but they also claimed invalidity or non-infringement. And had the jury found that or if there was a finding of invalidity, for example, or non-infringement, then we wouldn't have been aware of damages either. So that was never brought up during trial at all. In terms of damages in this correlation issue, there's a confusion, I believe, in ASUS between the inducement and the correlation that's necessary of use for damages. In Lucent, they said that you just needed a correlation in some way between the use and the actual damage award. And the actual inducement was shown through the first trial, through the manuals and so forth, and there was testimony. But that issue was resolved in the first trial and wasn't an issue for the second trial, which was just on damages. Well, I'm not a fan of people waxing poetic, but do you want to summarize up your best argument for why you believe there should be a clear affirm on this infringement issue that we've all been discussing here? I believe there should be a clear affirm because the district court, when you look at the claim construction and then you look at what they are saying is wrong with it and talking about, oh, it has to have logical conditions. Well, it talks about logical operations and other parts of the claims. It also talks about the identifying of said input image pixels having said selected individual color. So once you've selected red, for example, then the next step is to identify the pixels or identify the conditions under which you will change those pixels, which pixels within red it will change. But it doesn't affect. And then the last step, of course, is the display without affecting the other color. So if you change something in red, it's not going to affect blue or green. However, and maybe this is shown better in like a six axis. For example, a three axis that only has red, blue, or green as your choices, changing red could change at least to the human eye what we would consider purple or pink or magenta or anything else. But when you go to a six axis, it doesn't change that. It would have a different effect because the computer doesn't see that as red. They would see that as magenta, for example, and be defined that way. Thus, the construction makes sense when you read the rest of the claims instead of trying to muddle it. And I don't believe that there was a second claim construction or a secret claim construction that was given because the so-called secret claim construction is really just is something that is incorporated when you have to read the plurality of said input pixels. Okay, we're out of time. Let me ask you a question. If we were to pause the issuance of a decision for 30 days to enable the parties to discuss settlement, would that be useful? My client would certainly be open to that. I think that's a better question for maybe a six. Thank you. Thank you. Mr. Joshi, before you get into your rebuttal, what's your response to that? Yeah, obviously, I would make a strong recommendation to the client that we participate fully in any type of mediation if there is a pause of 30 days. Okay. Judge Cunningham, Your Honor, if I may start by answering your question, may I please ask you to take a look at Appendix 2587?  So this is the motion for reconsideration? Yeah, this is the motion, but let me show you why it's a trial document. Do you see the date of filing is at May 19, 2021? Yes. And then if I may ask you to just flip a few pages to 2597. It's about four or five pages later. Do you see the trial? It's a trial transcript? I see it. Okay, and the date on that is May 20, 2021. So this is happening in between the trial. This is happening, we filed this during the trial. Understood. Okay, so this is not something that happened months before. So this is happening now. What I point out to you, Judge, is that if you go to 2588, this is Dr. Dusharme, the other side's expert, and there is a paragraph that's highlighted in gray. And this is what he says. He says, so, I mean, I could imagine a scenario where I don't know for what purpose you could design and identify an arithmetic or logical operation using a combination of logical operators that would select the pixels of zero. It doesn't make any sense to me, but the patent teaches that the designer has the ability to combine these operators and still meet the limitation. And so that's where we quote him. And then on the next page, I ask him, well, he says, I said, and I'm only talking about input pixels having red. And my question is, for the accused products, what was the value of red that determined whether you selected certain input pixels and didn't select any other pixels? And he says, in the accused products, it was a value greater than zero. So he says, slightest red, that's the logic that he came up with. Now, you know, Judge Chen raised an interesting point. That this is a wonky patent, and it says different things in different places. Fine. If we have these preferred embodiments with six logical conditions, and the district court doesn't want that to be limited, then make that the definition in the first place. Then we can invalidate the patent easily. Don't make it hard for us to invalidate and easy for them to say we infringed. So that's fine. But if there is so much chaos in the patent, then let's make that the definition. So we can work with the same definition for invalidity and infringement. But at the trial, we have- Where did you say, where did you preserve that in the trial? Where you said, okay, we need- No. We need to be able to make our invalidity case now. And we need to do that through your so-called secret construction. But you're not letting us do that. That was a strategic decision where we stuck with the definition that we believe was right for invalidity. So we didn't make that objection. Because, you know, the art is chosen well in advance of the trial, and the expert reports are submitted in advance of the trial, and we're bound by what's in the expert report. So we didn't have the ability to spin on a dime. But we kept appealing it, as I just showed Judge Cunningham. Okay. Let's look for the questions. I think we're out of time. Thank you. Thank both counsels. Thank you, Your Honors.